THOMAS D. LOVETT, as Administrator of Estate of D. S. Lovett, deceased, and MAMIE A. LOVETT, a widow, v. PEOPLES FIRST NATIONAL BANK OF QUITMAN, a corporation, and the SOUTH GEORGIA GROCERY COMPANY, a corporation.

178 So. 124.

Opinion Filed January 20, 1937.

Rehearing Granted February 20, 1937.

On Rehearing January 18, 1938.

C. L. *Waller, Claude Pepper,* and *Charles H. Spitz,* for Appellants;

*Davis & Davis, Charles E. Davis, R. C. Horne* and *W. T. Davis,* for Appellees.

PER CURIAM.—The appeal is from final decree as follows:

"This matter comes on for final consideration upon the Bill of Interpleader as filed by Complainant, and the Answers thereto as filed by Mamie A. Lovett, Peoples First National Bank of Quitman, Georgia, and South Georgia Grocery Company, a corporation, said Answers also by agreement between the parties and their counsel being taken and considered as a Bill of Complaint on the part of each answering defendant, as regards the several claims made regarding the insurance money impounded in the registry of the Court in connection with the Interpleader proceedings. Testimony was taken in part before the Court and in part before an Examiner, and all of the testimony was duly transcribed and filed together with nmerous exhibits on behalf of the parties, all of which will appear from the record itself. Argument both oral and by brief was presented to the Court by counsel for the parties.

"The main contention centers around who shall receive the money now in the registry of the Court and which was paid to settle an insurance claim on the loss of a dwelling house by fire. Mrs. Lovett, as mortgagee, claimed the pro-

ceeds of the insurance and the aforesaid Bank and Grocery Company claimed that Mrs. Lovett's mortgage on the property as executed to her by her husband, D. S. Lovett, is invalid on the ground that no *bona fide* consideration passed therefor, and that it was executed for the purpose of defeating creditors and that they, therefore, should receive the money to apply on indebtedness due them by Mr. Lovett in his lifetime. In pursuance of their claims the Bank and the Grocery Company had instituted suit in the Circuit Court of Madison County and a copy of the judgment obtained by the Bank in its suit appears in the evidence. The Grocery Company obtained a judgment in Georgia and made same the basis for its suit in Madison County, but outside of a general allegation there is nothing in the record here to show what was the final disposition of the same. Each of these litigants also had writs of garnishment issued and served on the insurance company. The time of service of the writ issued on behalf of the Bank is shown by the record, but the record does not disclose the time of service of the writ issued on behalf of the grocery company.

"Upon a consideration of the circumstances shown by the whole record the Court is of the opinion that the mortgage in question is violative of the provisions of Section 5771, Compiled General Laws of Florida, and is, therefore, invalid and of no legal effect. By this the Court does not intend to determine that Mr. Lovett was personally dishonest but that the conclusion of the court from the record is, that he was confronted by difficulties, and that the mortgage in question was executed by him for 'protective' purposes as has been done many times by the best of men in times of stress as a temporary buttress against the sacrifice of their property on the auction block of judicial sale to satisfy litigating creditors who cannot or will not wait

until better times come to their debtors. If Mr. Lovett had lived there is no doubt in the mind of the Court that he would have satisfactorily arranged these matters in due time.

"From the record the court also concludes that the Peoples First National Bank of Quitman, Georgia, has a first and prior lien for the payment of its claim, which is superior to that of South Georgia Grocery Company.

"It appears from the record that the sum of $2675.00 was paid into the registry of the Court by the aforesaid, and that out of this sum there has already been paid by agreement of the parties and their counsel, the sum of $200 as attorney fee to Cockrell & Cockrell for their services in the Interpleader proceedings, and that a balance of $2475.00 remains in the court registry subject to disposition.

"It appears that the amount of the judgment obtained by the aforesaid Bank is $1938.54, and that the amount of the judgment obtained by aforesaid Grocery Company in Georgia is $557.25.

"Therefore, it is ordered and decreed that the Bill of Complaint of Mamie A. Lovett for an accounting and for foreclosure of aforesaid mortgage be, and the same is hereby dismissed, and said mortgage adjudged invalid and void.

"It is further ordered and decreed that after the payment of all the legal court costs of this Interpleader proceedings as same shall be taxed by the Clerk of this Court in accordance with law, that the Clerk of this Court do pay over to the aforesaid Peoples First National Bank of Quitman, Georgia, a corporation, out of the aforesaid sum in the registry of the Court the sum of $1938.54, and that the balance remaining in said deposit be paid over to the aforesaid, South Georgia Grocery Company, a corporation, to

apply on its aforesaid claim of $557.25 as aforesaid, said costs to be paid out of said funds in Court registry."

We think the controlling question in this case is stated by appellee, as follows:

"Where it appears that a husband who is indebted in large sums to others, without any agreement with, or demand from, his wife, voluntarily executed notes payable to her on demand, each bearing a different date from the others and all antedating the time of their execution, and at the same time voluntarily executed a mortgage upon his real estate to secure such, which said mortgage contains a provision obligating mortgagor to carry insurance on the building located on mortgaged land in blank amount, payable to mortgagee in case of loss, and without delivering the said notes and mortgage to the wife, took the mortgage to the office of the Clerk of the Circuit Court, who was the brother-in-law of the mortgagor, and requested such Clerk to file it and not record it until he notified him further, and the Clerk, pursuant to such request, put his file mark thereon as of the date the mortgage was handed to him, and then put the mortgage in a secret drawer with certain deeds purporting to convey real estate from the mortgagor to three of his very young children, which deeds were at the same time left with the Clerk with like instructions, and the said documents were not actually placed on record for some time and not until after a dwelling house on the mortgaged premises had been destroyed by fire, and writs of garnishment had been sued out by creditors and served upon the insurance company that insured the building, will a Court of Equity enforce an equitable lien against the insurance fund in favor of the wife, notwithstanding the insurance and service of the writs of garnishment, where it is also made to appear that the wife claims the

notes represent debts due her for money that she, at different times over a period of years, turned over to, or permitted, her husband to use as his own and as he saw fit, without any agreement to repay the principal or interest, and without any accounting whatever to her?"

The Chancellor answered this question in the negative and it appears to us that whether or not that answer was correct is to be determined by deciding whether or not the record established the facts assumed in the question.

The record contains substantial evidence to establish each and every of the facts assumed in the above quoted question and, those facts being found to be true, the mortgagee, Mamie A. Lovett, was not entitled to the relief prayed, but her rights, if any, were junior and subordinate to the rights of creditors who instituted garnishment proceedings before the alleged mortgage to her became a matter of public record. That this must be a proper legal conclusion is so elementary that we do not deem it necessary to support the statement by argument or citing authorities.

Though it may be conceded that the mortgage was delivered by D. S. Lovett to his wife, Mamie A. Lovett, the record shows no notice of the making and delivery of the mortgage to the public or to the appellees prior to the service of garnishment involved in this suit, and Mrs. Lovett must be held responsible for this because she delivered the mortgage to her husband entrusting it to him to be placed on record (which is the most favorable aspect in which the matter may be viewed). But D. S. Lovett, instead of delivering the mortgage to the Clerk of the Circuit Court to be recorded, delivered it to the Clerk with the request that the Clerk place the file mark on it and keep it off the record until he, the Clerk, should be advised by Lovett to put it on the record. The Clerk complied with

that request and put the mortgage where the Deputy Clerk would not have access to it to file it and there kept it until he was notified by Mr. Lovett to put it on record, which was after suit had been filed by appellees and garnishment had been served.

It is also true that D. S. Lovett was not indebted to those appellees at the time he executed the mortgage to his wife, but he was at that time, as is shown by the record and the findings of the Chancellor, heavily indebted to other people and the conclusion is justified that the mortgage was made, executed and delivered to Mrs. Lovett for the purpose of making her appear as a preferred creditor. But, so far as the record shows, and so far as any notice to these appellees was concerned, D. S. Lovett continued until after the institution of their suit to hold the title to this property unencumbered by any mortgage to Mrs. Lovett. Under the facts as shown by the Chancellor and as above set forth Mrs. Lovett did not acquire under the mortgage a lien which could be enforced against or to the prejudice of the appellants here.

We have said that the record would warrant the conclusion that the mortgage was made for the purpose of causing Mrs. Lovett to appear to be a preferred creditor. The Chancellor found, however, that the mortgage "is invalid on the ground that no *bona fide* consideration passed therefor and that it was executed for the purpose of defeating creditors." This finding is amply supported by the record.

What we have said here is not in conflict with the opinion and judgment in the case of Weatheersbee v. Dekle, 107 Fla. 517, 145 Sou. 198, because of the salient fact existing in the present case, to-wit: that the mortgage, after being made and delivered, if it was delivered, was deliber-

ately and designedly held off the record and the knowledge of the existence thereof thereby withheld from those dealing with the husband having the right to assume by reason of the appearance of the record that title to the lands included in the mortgage remained in the husband unencumbered at the time he extended credit and until after they attempted to enforce their obligations as creditors of the husband.

The decree appealed from should be and is now affirmed. So ordered.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD, and DAVIS, J. J., concur.

### ON PETITION FOR REHEARING

PER CURIAM.—On petition for rehearing, the record and briefs in this cause have been again examined. As in the first examination, we are impressed with the fact that the cause turns on the evidence in support of the factual situation developed in the fourth and other questions argued. by Appellees. The evidence on these points is in conflict but a careful Chancellor resolved it in favor of Appellees. His finding has ample support in the record and we see no reason to ·disturb it.

Our former opinion is affirmed on rehearing.

It is so ordered.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur.

WHITFIELD, P. J., and CHAPMAN, J., concur in the opinion and judgment.

BROWN, J., dissents.

BROWN, J. (dissenting).—I am strongly of the opinion that a rehearing should be granted in this case. The petition for rehearing sets forth certain material facts which,

as I understand the former opinion, were not considered by the Court, but were overlooked, and which would lead to a different conclusion from that reached in said opinion.